UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN O. WHITE and MARK N. BEGLEY,<br><br>    Plaintiffs,<br>  v.<br><br>FINJAN HOLDINGS, INC., DANIEL CHINN, ERIC BENHAMOU, GLENN DANIEL, JOHN GREENE, HARRY KELLOGG, GARY MOORE, ALEX ROGERS, and MICHAEL SOUTHWORTH,<br><br>    Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiffs, by their undersigned attorneys, for this complaint against defendants, allege upon personal knowledge with respect to themselves, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1. This action concerns a proposed transaction announced on June 10, 2020, pursuant to which Finjan Holdings, Inc. ("Finjan" or "the Company") will be acquired by affiliates of Fortress Investment Group LLC ("Fortress") – CFIP Goldfish Merger Sub Inc. and CFIP Goldfish Holdings LLC.

2. On June 10, 2020, Finjan's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which CFIP Goldfish Merger Sub Inc., a wholly-owned subsidiary of CFIP Goldfish Holdings LLC, commenced a tender offer to purchase all of Finjan's outstanding common stock for $1.55 per share in cash (the "Tender Offer").

3. On June 24, 2020, in order to convince Finjan's stockholders to tender their

shares, defendants authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC").

4. The Solicitation Statement omits material information with respect to the Tender Offer, which renders the Solicitation Statement false and misleading. Accordingly, Plaintiffs allege herein that defendants violated Sections 14(d), 14(e), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

5. In addition, the Tender Offer is scheduled to expire one-minute following 11:59 p.m., Eastern Time, on July 22, 2020 (the "Expiration Time"). It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the Expiration Time so they can properly determine whether to tender their shares.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(d), 14(e) and 20(a) of the 1934 Act and Rule 14d-9.

7. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs

complained of herein, occurred in this District; and (c) certain defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiffs are, and have been continuously throughout all times relevant hereto, owners of Finjan common stock.

10. Defendant Finjan is a Delaware corporation and a party to the Merger Agreement. Finjan common stock is traded on the NASDAQ under the ticker symbol "FNJN."

11. Defendant Daniel Chinn is Chairman of the Board of the Company.

12. Defendant Eric Benhamou is a director of the Company.

13. Defendant Glenn Daniel is a director of the Company.

14. Defendant John Greene is a director of the Company.

15. Defendant Harry Kellogg is a director of the Company.

16. Defendant Gary Moore is a director of the Company.

17. Defendant Alex Rogers is a director of the Company.

18. Defendant Michael Southworth is a director of the Company.

## FACTS

19. Finjan is a globally recognized cybersecurity company. Finjan's patent portfolio focuses on software and hardware technologies used to proactively detect previously unknown and emerging threats on a real-time, behavior-based basis.

20. Fortress is a diversified global investment manager with approximately $43.5 billion of assets under management as of December 31, 2019. Founded in 1998, Fortress manages

assets on behalf of over 1,750 institutional clients and private investors worldwide across a range of credit and real estate, private equity and permanent capital investment strategies.

21. On June 10, 2020, Finjan's Board caused the Company to enter into the Merger Agreement.

22. Pursuant to the terms of the Merger Agreement, CFIP Goldfish Merger Sub Inc., a Delaware corporation and wholly-owned subsidiary of CFIP Goldfish Holdings LLC, commenced the Tender Offer to acquire all of Finjan's outstanding common stock for $1.55 per share in cash ("Offer Price").

23. According to the press release announcing the Tender Offer:

**Finjan Enters into Agreement to be Acquired by Affiliates of Fortress in an All Cash Transaction**

EAST PALO ALTO, Calif., June 10, 2020 - Finjan Holdings, Inc. (NASDAQ: FNJN) (Finjan) today announced that it has entered into a definitive agreement (the "Merger Agreement") pursuant to which affiliates of Fortress Investment Group LLC (collectively "Fortress") would acquire all outstanding shares of Finjan common stock for $1.55 per share in cash (the "Transaction"), representing an aggregate equity value of approximately $43.9 million. Finjan, a recognized pioneer in the development of cybersecurity technologies, will maintain its brand and business model post-transaction, licensing and enforcing a substantial patent portfolio that has been consistently upheld by courts and patent offices.

Under the terms of the Merger Agreement, Fortress will commence a tender offer to purchase all the outstanding shares of Finjan's common stock for $1.55 per share in cash. The closing of the tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Finjan's common stock. Following successful completion of the tender offer, Fortress will acquire all remaining shares not tendered in the offer through a merger at the same price as in the tender offer.

Finjan's Board of Directors unanimously approved the Merger Agreement and recommends that shareholders tender their shares. In connection with the Merger Agreement, directors and officers of the Company, together with shareholders, in the aggregate holding approximately 28 percent of the outstanding shares of common stock of the Company, have agreed to tender their shares in the offer pursuant to support agreements.

The Transaction is not subject to any financing condition and is expected to close in the third quarter of 2020.

Daniel Chinn, Chairman of Finjan Holdings, stated, "The Board of Directors thoroughly evaluated all of our strategic options, giving careful consideration to the current unprecedented and uncertain environment, and we believe that this transaction will provide the best outcome for Finjan and its stockholders. We appreciate the continued patience of our investors and employees and thank them for their support. We recommend all shareholders to tender their shares in the offer."

Phil Hartstein, President and Chief Executive Officer of Finjan, commented, "We believe that this transaction strengthens our ability to continue executing our business model, particularly while facing unpredictable timelines in the court system and a challenging macro-economic environment. The acquisition enables Finjan to continue to pursue our licensing mission and expand our reputation and credibility on policy related initiatives, while providing us greater resources and opportunities as a Fortress portfolio company."

Eran Zur, Managing Director and head of the Fortress IP Finance Group, commented: "Finjan pioneered many of the technologies that underpin how companies protect their networks from cyberattacks. Finjan had the foresight to patent its innovations and its patent portfolio has been repeatedly upheld by courts and patent offices while being widely licensed to industry players. Fortress and Finjan share a strong belief in the importance of preserving a patent system that allows innovators to earn a fair return on their investment and we look forward to supporting Finjan as it moves forward with its licensing program."

Atlas Technology Group, LLC is acting as exclusive financial advisor to Finjan, and Perkins Coie LLP and GCA Law Partners LLP are serving as legal advisors to Finjan. Sidley Austin LLP is serving as legal advisor to Fortress.

24.     The Offer Price is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Tender Offer.

25.     It is therefore imperative that the Company's common stockholders receive the material information that defendants have omitted from the Solicitation Statement so that they can meaningfully assess whether to tender their shares.

26.     Section 6.03 of the Merger Agreement provides for a no solicitation clause that

prevents Finjan from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

    (a)    Except as expressly permitted by this Section 6.03, the Company shall, and shall cause each of the Company Subsidiaries and its and the Company Subsidiaries' officers and directors (and shall instruct and use its reasonable best efforts to cause its and their respective employees, consultants, legal counsel, financial advisors and agents and other representatives (such officers, directors employees, consultants, legal counsel, financial advisors and agents and other representatives, collectively, "Representatives")), to: (i) following execution of this Agreement, immediately cease any existing solicitations, knowing encouragement, knowing facilitation, discussions or negotiations with any Persons that may be ongoing with respect to any inquiry, indication of interest, proposal, discussion, offer or request that constitutes or could reasonably be expected to lead to, or result in, an Alternative Proposal (an "Inquiry") and immediately terminate any such Person's access to any physical or electronic data rooms ; (ii)  (A) as promptly as reasonably practicable (and in any event within two (2) Business Days) following the date hereof, request the prompt return or destruction (to the extent provided for by the applicable confidentiality agreement) of all confidential information previously furnished to any Person (other than Parent or its Representatives) that has, made or indicated an intention to make an Inquiry and (B) until the earlier of the Effective Time or the date, if any, on which this Agreement is terminated pursuant to Section 9.01, enforce the provisions of any existing confidentiality or non-disclosure agreement entered into with respect to any Inquiry (except with respect to immaterial breaches thereof); provided that the Company shall be permitted to grant waivers of, and not to enforce, any standstill provision to the extent necessary to permit the counterparty thereto to make an Alternative Proposal directly to the Company Board in accordance with the terms of this Section 6.03; (iii) from and after the date hereof until the earlier of the Effective Time or the date, if any, on which this Agreement is terminated pursuant to Section 9.01, subject to the other provisions of this Section 6.03, not, directly or indirectly, (A) solicit, initiate or knowingly encourage or facilitate any Inquiry or an Alternative Proposal, (B) furnish non-public information to or afford access to the business, employees, officers, Contracts, properties, assets, books and records of the Company and the Company Subsidiaries to any Person in connection with an Inquiry or an Alternative Proposal or (C) enter into, continue or otherwise participate in any discussions or negotiations with any Person with respect to an Inquiry or an Alternative Proposal (other than (x) informing any Person that has made or, to the Knowledge of the Company, is making any Inquiry with respect to, or is considering making, an Alternative Proposal, of the existence of the provisions of this Section 6.03(a) or (y) contacting any Person that makes an Inquiry or Alternative Proposal after the date hereof and is party to a confidentiality agreement in effect between such Person and Company as of the date hereof that by its terms would prohibit compliance by the Company with any of the provisions of Section 6.01(c) solely to (1) request that such confidentiality agreement be promptly waived

to the extent required to permit the Company to comply with its obligations hereunder and (2) inform such Person that unless such confidentiality agreement is waived, the Company is unable to consider or engage in any discussions with respect to such Inquiry or Alternative Proposal; and (iv) until the earlier of the Effective Time or the date, if any, on which this Agreement is terminated pursuant to Section 9.01, subject to the other provisions of this Section 6.03, not, directly or indirectly, and the Company Board and each committee of the Company Board shall not, (A) approve, agree to, accept, endorse, recommend, declare advisable or submit to a vote of its stockholders any Alternative Proposal, (B) fail to make, or withdraw, qualify, withhold, modify or amend, in a manner adverse to Parent and Merger Sub, the Company Recommendation or fail to include the Company Recommendation in the Schedule 14D-9, (C) take any action to exempt any Person from the provisions of Section 203 of the DGCL or any other applicable state takeover statute, (D) make any public statement, filing or release adverse to the Company Recommendation, (E) fail to recommend, in a Solicitation/Recommendation Statement on Schedule 14D-9, against any Alternative Proposal subject to Regulation 14D under the Exchange Act within ten (10) days after the commencement of such Alternative Proposal, (F) approve, adopt or recommend any Alternative Proposal, or propose publicly to approve, adopt or recommend, any Alternative Proposal, (any of the foregoing clauses (A) through (F) in this subsection (iv), an "Adverse Recommendation Change"), (G) fail to publicly reaffirm the Company Recommendation within the later of (x) three (3) Business Days after Parent so requests in writing and (y) seven (7) Business Days following the commencement by a third party of any tender offer or exchange offer related to the Company Common Stock, (H) enter into any letter of intent, agreement in principle, term sheet, merger agreement, acquisition agreement, option agreement or other similar Contract (except for Acceptable Confidentiality Agreements) relating to or providing for any Alternative Proposal or a potential Alternative Proposal or requiring the Company to abandon, terminate, materially delay or fail to consummate, or that would otherwise materially impede or interfere with, the Merger, the Offer or any of the other transactions contemplated hereby (an "Alternative Acquisition Agreement") or (I) agree or resolve to take any action set forth in the foregoing clauses (A) through (H). It is agreed that any Willful Breach of the restrictions set forth in this Section 6.03(a) by any Affiliate of the Company or any Representative of the Company or any of its Affiliates shall be deemed a breach of this Section 6.03(a) by the Company.

27. In addition, Section 9.03 of the Merger Agreement requires Finjan to pay a $1,353,709 "termination fee" to CFIP Goldfish Holdings LLC in the event this agreement is terminated by Finjan and improperly constrains the Company from obtaining a superior offer.

28. Defendants filed the Solicitation Statement with the SEC in connection with the Tender Offer. As alleged herein, the Solicitation Statement omits material information, which

7

renders the Solicitation Statement false and misleading.

29. First, the Solicitation Statement omits material information regarding Finjan's financial projections.

30. With respect to Finjan's financial projections, the Solicitation Statement fails to disclose unlevered free cash flow projections for 2020-2024 and all line items used to calculate projected unlevered free cash flows.

31. The disclosure of projected financial information is material information necessary for Finjan stockholders to gain an understanding of the basis for any projections as to the future financial performance of the company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

32. Second, the Solicitation Statement omits material information regarding the analysis performed by the Company's financial advisor Atlas Technology Group, LLC ("Atlas") in connection with the Tender Offer.

33. With respect to *Atlas's Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) unlevered free cash flows and all line items used to calculate unlevered free cash flows, (ii) the discount rate range used in the analysis, (iii) the individual inputs and assumptions underling the mid-range discount rates of 20% to 30%, and (iv) illustrative enterprise values for the Company. This information must be disclosed to make the Solicitation Statement not materially misleading to Finjan stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

34. Third, the Solicitation Statement fails to disclose the "liquidation value analysis" performed by Company management in April 2020. This analysis was used "to determine whether

it would be more desirable for the Company to liquidate than to sell at $1.50 per share to Party B," and therefore must be disclosed to provide Finjan stockholders with full and relevant information in considering whether to tender their shares.

35. The omission of the above-referenced material information renders the Solicitation Statement false and misleading.

36. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(e) OF THE EXCHANGE ACT)

37. Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

38. Section 14(e) of the 1934 Act states, in relevant part, that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

39. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

40. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

41. The Solicitation Statement misrepresented and/or omitted material facts in

connection with the Tender Offer as set forth above.

42. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

43. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Tender Offer. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

44. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

45. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

46. Because of the false and misleading statements in the Solicitation Statement, plaintiffs are threatened with irreparable harm.

47. Plaintiffs have no adequate remedy at law.

## COUNT II

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(d) OF THE EXCHANGE ACT AND RULE 14d-9 PROMULGATED THEREUNDER)

48. Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

49. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

50. Rule 14d-9(d) states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

51. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

52. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

53. The omissions in the Solicitation Statement are material to plaintiffs, and who will be deprived of his right to make a fully informed decision with respect to the Tender Offer if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

### COUNT III

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

54. Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions

as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Tender Offer. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Tender Offer. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

58. In addition, as the Solicitation sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and 14(d) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiffs will be irreparably harmed.

61. Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Tender Offer;

B. In the event defendants consummate the Tender Offer, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e) and/or 20(d) of the 1934 Act, as well as Rule 14d-9 promulgated thereunder;

E. Awarding Plaintiffs the costs of this action, including reasonable allowance for Plaintiffs' attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

Dated: July 8, 2020  **MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiffs*